UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KATHARINE BUSH, *et al.*,<br><br>    Plaintiffs,<br><br>  v.<br><br>RUTH'S CHRIS<br>STEAK HOUSE, INC., *et al.*,<br><br>    Defendants. | Civil Action No. 10-1721 (BJR)<br><br>MEMORANDUM OPINION |

**GRANTING IN PART & DENYING IN PART THE PLAINTIFFS' MOTION TO COMPEL**

## I.  INTRODUCTION

The plaintiffs are former female employees of Ruth's Chris Steak House who allege that they were subjected to gender discrimination by Defendants, Ruth's Chris and other related corporate entities. Plaintiffs seek to represent a class of similarly situated women, prosecuting claims under Title VII, 42 U.S.C. § 2000(e) *et seq.*, and the District of Columbia Human Rights Act ("DCHRA"). In December 2011, the court issued an order that bifurcated the class and merits discovery. *See generally* Order (Dec. 19, 2011). The parties disagree on their interpretation of various provisions of that Order. These disagreements have prompted Plaintiffs to file a motion to compel, which is currently before the court. For the reasons discussed below, the court grants in part and denies in part Plaintiffs' motion.

## II. BACKGROUND & ANALYSIS

### A.  W-2 data

The court's December 19, 2011 order ("the Order") requires Defendants to produce a computer-readable copy of W-2 data for "all persons employed during [January 1, 2006 to December 31, 2009] as Regional Vice President, General Manager, Sales Manager, National

Sales Manager, Assistant General Manager, and Assistant Sales Manager, as well as for a random sample of 100 persons employed as Bartender and Key Employee" (hereinafter, "the relevant positions").[1] *See* Order (Dec. 19, 2011) at 5. The court limited the scope of human resources data like the W-2 data to what is presently available in Defendants' databases for January 1, 2006 to December 31, 2009 ("the relevant time period"). *Id.* Further, the Court ordered that "Defendants shall not be required to compile results from review of employee records." *Id.*

Plaintiffs argue that Defendants have not complied with the Order because they have only produced summary reports of W-2 annual earnings totals, as opposed to the "raw W-2 data as it is kept in the ordinary course of business." Pls.' Mot. at 2. Plaintiffs further argue that even those summary reports produced by Defendants are deficient because Defendants have limited their production of an employee's W-2 data to only those years that he or she held one of the relevant positions. *Id.* Thus, the plaintiff argues that if an employee was a Manager in 2006 and was later promoted to an Assistant General Manager in 2009, Defendants would have only provided the 2009 W-2 information, for instance, and not his 2006, 2007, and 2008 W-2s. *Id.*

Defendants insist that they have produced the W-2 data that that they maintain in their ordinary course of business. Defs.' Opp'n at 3. According to Defendants, satisfying Plaintiffs' request would require them "to run individual payroll reports for each relevant employee at issue, or run one report for all of the relevant employees and extract the information from that report" for each individual employee – a burdensome task. *Id.* at 3-4. Additionally, Defendants argue that Plaintiffs' request would expand the scope of the Order to include positions other than the relevant positions, like servers and managers, "bringing the number of employees at issue

---

[1] Employees during the relevant time period employed as the relevant positions are described herein as "relevant employees."

potentially into the thousands." *Id.* at 4. Lastly, Defendants argue that the "paycheck-by-paycheck" information sought by Plaintiffs is irrelevant to this case. *Id.* at 4-5.

The court's prior order makes clear that Defendants are not required to sift through their employees' records and compile certain forms of Human Resources Data, including W-2 data. Defendants are therefore not required to produce paycheck-by-paycheck material. By **July 20, 2012**, Defendants shall, however, turn over the 2006-2009 W-2 data for any relevant employee, including W-2 data for those years within the relevant time period when the employee did not hold one of the relevant positions.

### B. Job History

The Order requires Defendants to produce information on "job history including any changes in job function" for those employed during the relevant time period and in the relevant positions. Order (Dec. 19, 2011) at 4. Plaintiffs acknowledge that Defendants have produced "the relevant employees' initial salary and position information and the employees' job histories between January 1, 2006 and December 31, 2009." Pls.' Mot. at 6. However, Plaintiffs also seek pre-January 1, 2006 job history data in cases where a relevant employee was hired before January 1, 2006, so as to fill any gaps between the hire date and 2006. *Id.* Such information, according to Plaintiffs' expert, is necessary "to analyze fully the data on promotions and determine the appropriate comparators." *Id.*

In response, Defendants argue that notwithstanding the court's Order limiting discovery to the time period between January 1, 2006 to December 31, 2009, Plaintiffs now seek job history information relating to dates outside this period. Defs.' Opp'n at 5. Moreover, Defendants contend that the job history information sought by Plaintiffs is irrelevant since their discrimination claims "center upon the fact that males from outside of the company were hired into Regional Vice President positions from 2006 forward." *Id.*

3

The Order unambiguously limits the production of job history information for those employees who were employed in relevant positions during the January 1, 2006 to December 31, 2009. Order (Dec. 19, 2011) at 4-5. The Order does not explicitly limit the job history information that must be produced to the job history that occurred between January 1, 2006 and December 31, 2009. *Id.* The Order does, however, then go on to limit the production of all of the human resources data to "what is presently available in their database(s) for the relevant time period." *Id.* at 5.

Although this later limitation admittedly muddles the waters, common sense dictates that job history information should not be limited to the history that occurred between 2006 and 2009. For instance, the court also ordered Defendants to produce "educational background" information for relevant employees, similarly limiting the educational background information to what is presently available in Defendants' databases for the relevant time period. Yet the court did not mean to limit production to only that the schooling that was completed during the 2006-2009 time period. To read the Order in such a narrow way would defeat the purpose of ordering such discovery in the first place. The same can be said with respect to the court's Order that Defendants produce job history for the relevant employees.

Moreover, the Order not only requires Defendants to produce job history information but also more detailed position-related information for the relevant employees, specifically "pay grade, job title or position (including job code, if any), location, division, department, months in position . . . ." *See* Order (Dec. 19, 2011) at 5, ¶ 5. It defies logic that the court would order disclosure of job history and the more detailed position-related information if the latter category automatically subsumes the first (because it would naturally include the job history for the 2006-2009 period); yet this is the conclusion that Defendants' arguments demand. In sum, the court meant for job history to signify more than just the positions and grades held by the relevant

4

employees during 2006-2009.  Accordingly, on or before **July 20, 2012**, Defendants shall produce all job history information to Plaintiffs for all relevant persons, including those positions that were held since the initial hire dates but pre-dating 2006.

### 3.  Servers

The Order limited the scope of discovery to those positions "which were either held by Plaintiffs or positions they hoped to obtain."  Order (Dec. 19, 2011) at 3.  The court named these positions, specifically excluding the position of server.  *Id*.  Plaintiffs represent that it has now come to their attention that one of the named plaintiffs, LaDawn Harris-Robinson, worked as a server, and they therefore seek that Defendants turn over human resources data on employees who held the position of server.  Pls.' Mot. at 8-9.

Plaintiffs argue that they should not be penalized due to their "oversight," in "fail[ing] to notify the Court prior to December 19 that Ms. Harris-Robinson had been employed as a server." *Id.* Data on servers, Plaintiffs maintain, will allow them to "analyze the promotions pipeline." *Id.*  Defendants respond that Plaintiffs' attempt to include discovery on all servers employed by Ruth's Chris Steak House during the relevant time period is an inappropriate request given that Plaintiffs knew or should have known that Ms. Harris-Robinson was a server in 2002.   Defs.' Opp'n at 6.  Defendants also argue that the position of server is irrelevant here, as Ms. Harris-Robinson alleges she was discriminated against while she was working as a bartender and aspiring to be a key employee, not a server.

The Order plainly limits discovery to certain positions, excluding servers, and the court agrees with Defendants that revisiting this issue would be inappropriate.  Plaintiffs knew or should have known as to Ms. Harris-Robinson's employment history.  Furthermore, Ms. Harris-Robinson states that she was hired as a server for only a few months back in 2002 and immediately became a bartender.  Defs.' Opp'n, Ex. C (Harris-Robinson's Dep.) at 25.  As

defendants note, the discrimination she alleges involve her attempts to move from a bartender position to that of key employee. In sum, opening discovery to all servers as a result of Ms. Harris-Robinson's stint as a server in 2002 would be imprudent and the court declines to do so.

### 4. Third Party Vendors

According to Plaintiffs, Defendants have failed to produce information from Ruth's Chris's applicant tracking database as well as certain test results because the information is being maintained by third-party vendors. Pls.' Mot. at 10. Plaintiffs argue that Defendants are required to produce these items because they are within Defendants' custody or control, and that Defendants must pay any costs associated with obtaining the records. *Id*. Defendants respond that they do not have control because they have neither possession of the documents nor an employment relationship with the third party vendors, such that Defendants would have a legal right to obtain the documents at issue "on demand." Defs.' Opp'n at 10. Defendants propose that the more appropriate course of action would be for Plaintiffs, as the requesters of the information, to either pay for the production of these documents or to request them through a third party subpoena. *Id*.

Federal Rule of Civil Procedure 34(a) allows a party to request the production of documents and electronically stored information from an adversary if the sought items are in the adversary's "possession, custody, or control." FED. R. CIV. P. 34(a). Control does not require that the party have legal ownership or actual physical possession of the documents at issue, but rather "the right, authority or practical ability to obtain the documents from a non-party to the action." *In re NTL, Inc. Sec. Litig.*, 244 F.R.D. 179, 195 (S.D.N.Y. 2007); *see also United States ITC v. ASAT, Inc.*, 411 F.3d 245 (D.C. Cir. 2005) (defining control as "the legal right, authority or ability to obtain documents upon demand"). Moreover, "a party upon whom a discovery demand is served need not seek such documents from third parties if compulsory process against

the third parties is available to the party seeking the documents." *Nosal v. Granite Park LLC*, 269 F.R.D. 284, 290 (S.D.N.Y. 2010) (determining that the defendant hotel would not be required to produce documents in the possession of the vendor it had hired to refinish the hotel bathroom because hotel did not control the vendor (internal quotations and alterations omitted)).

To evaluate whether Defendants have the right, authority, or practical ability to obtain the information from the third party vendors, the court must examine the relationship between Defendants and the vendors. Turning first to the issue of the applicant tracking records, the Defendants state that retrieval of this information requires "someone" to pay the third party vendor a flat rate of $500. Def.'s Mot. at 8. It appears that the applicant tracking third party vendor has entered into an agreement with Ruth's Chris, by which the vendor provides a service, *i.e.* the maintenance of applicant records, for a flat rate retrieval fee. The details of the arrangement, however, remain unclear, and such details are critical to evaluate whether Ruth's Chris has control over the third party vendor.

It would require a large investment of the court's time to determine whether Defendants control this third party vendor. This would not only take up judicial resources but also prevent this case from moving forward expeditiously. Given these considerations, as well as the relatively small fee at issue here, the court orders each party to pay half of the $500 fee.[2]

Next, the court turns to analyze the Defendants relationship with Kenexa, the third party vendor that owns Batrus Hollweg, a test taken by Ruth Chris's employees that Plaintiffs allege contributes to barriers in advancement for female employees. Kenexa maintains the assessment scores and individual test results for the employees at issue. To retrieve the data, Kenexa is charging $150 per hour, and the task could amount to forty or more hours. Defs.' Opp'n at 9. Defendants admit that these records are also kept in their own personnel files but refuse to

---

[2] In the future, the court expects that the parties will be able to work out such disagreements.

compile the records themselves, noting that the court explicitly stated in its Order that "Defendants shall not be required to compile results from review of employee records." *Id.* at 8.

The test data sought is in Defendants' possession, and therefore must be disclosed under Rule 34. Although the court's Order did specify that Defendants would not be "required to compile results from [their] review of employee records," this applied to human resources data, not the test records at issue here. Indeed, the Batrus Hollweg test records are discussed under a different subheading of the court's Order entitled "Test Data," under which there is no mention of the language cited by Defendants. *See* Order (Dec. 19, 2011) at 5, 8. As such, the court orders Defendants to produce these test results by **July 20, 2012**.

### 5. Performance Evaluation Scores

The court previously ordered Defendants to produce a computer-readable copy of relevant performance evaluation scores and the date for each evaluation. Order (Dec. 19, 2011) at 4. As with other types of human resource data, the court specified that Defendants are only responsible to produce the information that is presently available in their databases for the relevant time period. *Id.* at 5. Further, Defendants are not required to compile results from a review of the employee records. *Id.*

Defendants have produced the evaluation data to the extent that Ruth's Chris tracked such information in its databases. Pls.' Mot., Ex. A-12. Plaintiffs argue that the evaluation score data produced is of limited value because the scores are rounded to the closest whole number. Pls.' Mot. at 12-13. Thus, the large majority of the evaluation scores were recorded as "3," making it impossible to appreciate the difference in a performance score of 3.0 and 3.49, for instance. *Id.*

Essentially, Plaintiffs ask the court to reconsider its prior order that Defendants are not required to compile information from employees' records, and ask that Defendants be required to

8

"pull the underlying actual performance evaluations" from the relevant employees' files and provide that to Plaintiffs. *Id.* at 13.  The court declines to reconsider its Order.  This matter is before the court on Plaintiffs' motion to compel, not their motion for reconsideration.  The court has already considered and weighed in its prior analysis the burden that would be imposed on Defendants to compile this type of information.  Therefore, the court declines the relief requested by Plaintiffs as to this issue.

### 6.  Date of Birth

Plaintiffs request that Defendants produce the birthdates for employees who held specific positions during the relevant time period.  Pls.' Mot. at 14.  Plaintiffs want to use the date of birth information to compare how female employees' qualifications compared to their male counterparts, and whether "gender-based statistical differences as to promotions exist."[3]  *Id.* at 15.  Defendants argue that using age as a proxy for work experience is misleading because, as noted by an opinion written in 1990 by the District Court for the District of Columbia, it "assumes that women are working as consistently and continuously as men and makes no allowance for time off for childbearing nor for time or leave for childbearing which under today's societal practices generally falls on women."  Defs.' Opp'n at 13-14.  In elaborating on this argument, Defendants argue that two of the five named Plaintiffs did indeed take time off from work in order to care for their families.  *Id.* at 14.

The court grants the plaintiffs' request for discovery on date of birth information.  Many courts have more recently allowed parties to use age as a proxy for experience when running statistical analyses.  *See e.g.*, *Reed v. Advocate Health Care*, 268 F.R.D. 573, 591 (N.D. Ill. 2009); *Gutierrez v. Johnson & Johnson*, 2006 U.S. Dist. LEXIS 80834, at *15 n.6 (D.N.J. Nov.

---

[3]  Alternatively, Plaintiffs request that "the Court order Defendants to produce the documents and information that show the actual work history of employees who have held relevant jobs during the Time Period and prohibit Defendants from relying, in any way, on date of birth information."  *Id.* at 16.

6, 2006); *Wright v. Stern*, 450 F. Supp. 2d 335, 361 (S.D.N.Y. 2006). Defendants' arguments against allowing age as a proxy for work experience are based on sex-based stereotypes, but Defendants have failed to provide evidence to support the validity of these stereotypes. *Melani v. Board of Higher Education*, 561 F. Supp. 769, 779 (S.D.N.Y. 1983) (declining to dismiss class action suit despite defendant's arguments that age was an inappropriate proxy for women, and concluding that "[s]uch sex-based stereotypes . . . if supported by evidence relevant to the class at issue" are more appropriately brought up in the defendant's rebuttal). Instead, Defendants' arguments rest on case law – cases in which the court decided that age was not an appropriate proxy for experience *based on the record* before them. See *Trout v. Garrett*, 1990 U.S. Dist. LEXIS 10060, at *4 (D.D.C. Mar. 30, 1990) (noting that both parties had filed briefings and a hearing had been held on the issue of whether age was an appropriate proxy for experience and considering the expert testimony provided on the topic); *Vuyanich v. Republic Nat'l Bank of Dallas*, 505 F. Supp. 224, 293 (N.D. Tex. 1980) (referring to expert's analysis which "illustrat[ed] how age could be a bad proxy for experience for females"). This court anticipates doing the same by considering evidence as opposed to stereotypes when determining whether the age proxy is appropriate here.

After the plaintiffs have conducted their regression models, the experts may weigh in on issues like sex-based differences in work experience and debate whether the statistical models can accurately account for such differences. *Gutierrez v. Johnson & Johnson*, 2006 U.S. Dist. LEXIS 80834, at *15 n.6 (D.N.J. Nov. 6, 2006) (noting that "decisions regarding what control variables to include in an expert report go to weight, not admissibility" and "any inadequacies in the methodology could be addressed in cross-examination"). The court will then be in a better position to determine whether or not the regression is reliable, *i.e.* whether age is an appropriate proxy for experience.

## IV.  CONCLUSION

For the foregoing reasons, the court grants in part and denies in part Plaintiffs' motion to compel.  An Order consistent with this Memorandum Opinion is issued this 18th day of June, 2012.

June 18, 2012

*Barbara J. Rothstein*

BARBARA J. ROTHSTEIN
UNITED STATES DISTRICT JUDGE